UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| PUBLIC GUARDIAN AND TRUSTEE OF GASTON C. DURAN PROVINCE OF ONTARIO,<br><br>Plaintiff,<br><br>v.<br><br>WAYNE COUNTY,<br><br>Defendant. | Case No. 24-cv-10988<br><br>Honorable Robert J. White |

## ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS

This case involves Plaintiff Public Guardian and Trustee of Gaston C. Duran Province of Ontario's and purported class members' claims against Defendant Wayne County (the County) arising out of the County's process for property foreclosure.[1] (ECF No. 1). Before the Court is Defendant's motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) (failure to state a claim). (ECF No. 13). The Parties fully briefed the motion and the Court held oral argument. For the

---

[1] According to the complaint, Plaintiff was appointed in February 2016 as guardian of the property at issue here, which was owned by Gaston C. Duran and is located in Wayne County. (ECF No. 1, PageID.6).

following reasons, the Court partially grants the motion. Specifically, the Court dismisses all Plaintiff's claims, but the state claims are dismissed without prejudice.

## I. Background

Plaintiff filed a class-action complaint on April 15, 2024, on behalf of "himself"[2] and all similarly situated plaintiffs. (ECF No. 1, PageID.2). The complaint alleges that the County's process of foreclosing on property under Michigan's General Property Tax Act (the GPTA), Mich. Comp. Laws § 211.1 *et seq.*, is constitutionally defective and deprived Plaintiff and similarly situated parties of "just compensation" for their properties. (ECF No. 1, PageID.7-12). Specific to the Duran property at issue, Plaintiffs allege that the County recorded a judgment of foreclosure for this property on August 9, 2017 (with a notice of judgment of foreclosure dated March 29, 2017), because Duran owed approximately $2,831.80 in delinquent taxes and related expenses. (ECF No. 1, PageID.13-14). Plaintiffs allege further that, following the foreclosure, the County conveyed the property to the City of Dearborn for $2,831.80 (the amount of debt owed); Dearborn later sold the property for $50,000. (ECF No. 1, PageID.14). Plaintiff asserts that the County

---

[2] It is unclear whether this refers to Plaintiff, the apparent guardian of the property at issue, or Duran, the property's owner. For the purpose of this motion, the Court assumes that Plaintiff is asserting claims either as a derivative owner of the subject property, or else on behalf of Duran.

2

illegally "took Plaintiff's equity and/or surplus in the Property" and "has refused to return any of the equity to Plaintiff." (ECF No. 1, PageID.14-15).

Plaintiff asserts claims of (1) an unconstitutional taking under the Fifth and Fourteenth Amendments, "and/or via" 42 U.S.C. § 1983 and § 1988 (Count I); (2) an unconstitutional inverse condemnation or taking under Michigan law (Count II); (3) a due process violation under 42 U.S.C. § 1983 and § 1988 (Count III); (4) unjust enrichment (Count IV); and (5) a violation of the Eighth Amendment (Count V). (ECF No. 1, PageID.19-26).  Plaintiff also requests declaratory relief (Count VI). (ECF No. 1, PageID.26-27).  Concerning the class claims, Plaintiff brings the action

> on behalf of the owners of real property in Wayne County during the relevant statutorily-limited time period, who were subject to the unconstitutional process which resulted in the taking and/or unconstitutional forfeiture of their equity, but excluding those who have separately filed their own personal post-forfeiture legal actions in state or federal courts.

(ECF No. 1, PageID.15).

The County now moves to dismiss under Fed. R. Civ. P. 12(6), arguing that (1) Plaintiffs' Counts I, III, and IV are untimely; (2) Counts II through IV fail as a matter of law; and (3) Plaintiffs' failure to state a claim concerning the Duran property requires dismissal of the related class claims. (ECF No. 13, PageID.117, 123-130).

3

I.       **Legal Standard**

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56). Although "it is usually not appropriate to dismiss a claim under Rule 12(b)(6) based upon the statute of limitations," the Court may do so when "the allegations in a complaint affirmatively show that a claim is time-barred." *Singh v. Proctor & Gamble Co.*, No. 23-3414, 2024 LEXIS 1672 (6th Cir January 24, 2024).

Relatedly, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items

4

appearing in the record of the case and exhibits attached to defendant's motion so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Ath. Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Both parties attached various exhibits to their briefing on the instant motion, all of which are appropriate for consideration under Rule 12(b)(6).

## II.     Analysis

### A.     Legal Backdrop

On July 15, 2020, the Michigan Supreme Court in *Rafaeli, LLC v. Oakland Cnty.*, 505 Mich. 429 (2020), held that municipalities' retention of a property owner's surplus proceeds (*i.e.*, sale proceeds in excess of debt owed) following foreclosure constituted "an unconstitutional taking without just compensation" under the state's constitution. *Id.* at 437. *Rafaeli* concluded that property owners have a vested property right under the state's common law, protected by Michigan's Takings Clause, "to collect the surplus proceeds that are realized from the tax-foreclosure sale of property." *Id.* at 470-72. At the time, the GPTA did not provide any mechanism to return excess proceeds from foreclosure to a property owner; instead, surplus proceeds were "used to subsidize the costs for *all* foreclosure proceedings and sales," with any remainder transferred to the county's general fund. *Id.* at 446-48 (emphasis in original). *Rafaeli* ruled this scheme unconstitutional "as applied to former property owners whose properties were sold at a tax-foreclosure sale for more

5

than the amount owed in unpaid taxes, interest, penalties, and fees related to the forfeiture, foreclosure, and sale of their properties." *Id.* at 474-75.

On December 22, 2020, less than five months after the *Rafaeli* decision, the Michigan Legislature enacted 2020 P.A. 256 to amend the GPTA. The current law establishes a process for the administration of claims for excess proceeds against foreclosing governmental units (FGUs), Mich. Comp. Laws § 211.78t, and establishes a statutory limitations period requiring that such claims be brought within "2 years after the judgment of foreclosure," Mich. Comp. Laws § 211.78*l*.

In 2022, the Sixth Circuit held that the plaintiffs had viable Fifth Amendment takings claims against Oakland County under nearly identical facts to those here. *Hall v. Meisner*, 51 F.4th 185, 187-89 (6th Cir. 2022). Specifically, Oakland County sold the foreclosed properties to the City of Southfield for the amount of debt owed on each, Southfield conveyed the properties to a neighborhood development entity for $1 each, and this entity ultimately sold most of the properties for a profit (the entity still held title to one property at issue). *Id.* at 189. Although the County retained no excess proceeds, unlike in *Rafaeli*, the court concluded that these facts amounted to an unconstitutional taking of the plaintiffs' equity without just compensation. *Id.* at 188, 195-96.

The Michigan Court of Appeals later held that such facts also constitute a taking under Michigan law. *Jackson v. Southfield Neighborhood Revitalization*

*Initiative*, ___ Mich. App. ___, ___; No. 361397, 2023 Mich. App. LEXIS 6834, at *43-53 (Sep. 21, 2023) (allowing unjust-takings claims under the Michigan Constitution where the FGU retains excess equity but no excess proceeds). However, *Jackson* is currently pending on an application for leave to appeal before the Michigan Supreme Court. *Jackson v. Southfield Neighborhood Revitalization Initiative*, 12 N.W.3d 600 (Mich. 2024). Oral argument is scheduled, and the court directed the parties to address:

> (1) whether the Court of Appeals correctly concluded that both MCL 211.78t and MCL 211.78m apply retroactively; (2) if so, whether plaintiffs' constitutional takings claims are precluded by MCL 211.78t, . . . ; (3) if not, *whether a violation of the Takings Clause of the Michigan Constitution . . . or of the Fifth Amendment of the United States Constitution may occur as to a tax foreclosure when there is no public auction of the foreclosed property and a governmental unit retains or purchases the property, resulting in no surplus proceeds*; (4) whether there was a violation of either Takings Clause by Oakland County under the facts of this case; and (5) if so, what compensation, if any, the taxpayer is entitled to from Oakland County.

*Id.* at 600 (emphasis added).

In May 2023, the United States Supreme Court decided *Tyler v. Hennepin Cnty.*, 598 U.S. 631 (2023), holding that the retention of surplus proceeds was a "classic taking" without compensation. *Id.* at 639.

More recently, in July 2024, the Michigan Supreme Court held that *Rafaeli* applies retroactively "to claims not yet final on July 17, 2020, the date [*Rafaeli*] was

7

issued." *Schafer v. Kent Cty.*, ___ Mich. ___, ___; Nos. 164975, 165219, 2024 Mich. LEXIS 1438, at *2 (Jul. 29, 2024).

> Respecting traditional standards of procedure and the interest of finality, *Rafaeli* is the rule of the law in Michigan that governs constitutional takings; it applies to *all* those who have been denied the surplus proceeds that remain after their property has been seized and sold as a result of tax foreclosure. There is no basis for this Court to decline application of *Rafaeli* to cases that are not yet final or to *timely filed claims* premised on events that predated our decision in *Rafaeli*. Therefore, *Rafaeli* has full retroactive effect.

*Id.* at *18-19 (emphasis added; footnote omitted); *see also id.* at *28 ("While respecting established procedural principles including forfeiture and finality, *Rafaeli* must be applied retroactively to *timely filed cases* not yet final at the time of the decision.") (emphasis added).

*Schafer* also provides that "[a]fter *Rafaeli*, claimants could bring requests for relief against counties and local governments under an inverse-condemnation theory to recover surplus proceeds within a six-year statutory limitations period." *Id.* at *29. The court determined that the GPTA's new two-year statute of limitations for all claims for excess proceeds, *see* Mich. Comp. Laws § 211.78*l*, only applied prospectively to claims that accrued after the GPTA was amended (i.e., after December 22, 2020). *Id.* at *34-35, 37. *Schafer* also determined that Mich. Comp. Laws § 211.78t's process to claim excess proceeds applied retroactively. *Id.* at *30-34. But the court allowed for a "reasonable time" following its decision for courts

to allow any claims that expired between when the GPTA was amended and the *Schafer* decision. *Id.* at *35-37.

### B. Motion to Dismiss

The County first argues that Counts I and III (the federal takings and due process claims) were both filed well after the three-year statute of limitations for § 1983 claims expired here, as supported by *Hall* and similar cases. (ECF No. 13, PageID.123-25). It similarly argues that Count IV (alleging unjust enrichment) was untimely filed outside Michigan's six-year statute of limitations for such claims. (ECF No. 13, PageID.127-28).

Furthermore, the County asserts that Count II (the state constitutional claim) fails as a matter of law because, pursuant to *Hall*, there cannot be a valid inverse-condemnation claim where Duran lost all right and title to the subject property in 2017. (ECF No. 13, PageID.125-26). And it asserts that this claim nevertheless requires abstention where it is a matter of state law and involves questions currently pending in Michigan courts. (ECF No. 13, PageID.125-26 n. 5). The County, again relying on *Hall*, argues further that (1) Count IV (alleging unjust enrichment) fails as a matter of law because the County's retention of excess proceeds was lawful when it occurred; and (2) Count V (the Eighth Amendment claim) fails as a matter of law because the GPTA is not punitive in nature. (ECF No. 13, PageID.127-29).

9

The County also argues that Count III (the due process claim) fails as a matter of law because courts have repeatedly upheld the provision Plaintiff challenges, Mich. Comp. Laws § 211.78t, and this process does not even apply here where the subject property was foreclosed on and sold in 2017. (ECF No. 13, PageID.126-27). Lastly, the County asserts that the class claims warrant dismissal because Plaintiff's individual claims fail. (ECF No. 13, PageID.129).

Plaintiff counters that the federal § 1983 claims and the state constitutional claim were tolled by (2) a Michigan Supreme Court COVID-19-related tolling order and (2) *Bowles v. Sabree*, No. 20-12838, 2022 U.S. Dist. LEXIS 8172 (E.D. Mich. Jan. 14, 2022), rev'd in part, aff'd in part, and remanded by No. 22-1912, U.S. App. LEXIS 8879 (6th Cir. Apr. 10, 2024)—a similar class action case to that here. (ECF No. 16, PageID.150-54). Plaintiff also argues that the takings claims are viable under *Hall* and a similar case. (ECF No. 16, PageID.154). Plaintiff relatedly argues that abstention is inappropriate concerning the state constitutional claim because *Jackson* allowed such a claim "in an identical fact situation" to that here. (ECF No. 16, PageID.154-56).

Next, Plaintiff argues that the due process claim is viable because the County's process lacked sufficient notice and an opportunity to be heard. (ECF No. 16, PageID.156-60). Plaintiff highlights "a multitude of procedural irregularities," specifically arguing that the County's foreclosure was essentially invalid because the

10

Duran property was not delinquent on taxes for a full year before foreclosure. (ECF No. 16, PageID.158-60). Finally, Plaintiff argues that the complaint sufficiently states claims for unjust enrichment and under the Eighth Amendment. (ECF No. 16, PageID.160-63).

In reply, the County argues that Plaintiff's claims are untimely and there was no tolling. (ECF No. 19, PageID.235-38). The County also argues that Plaintiff's claims fail as a matter of law because Mich. Comp. Laws § 211.78t now provides the exclusive mechanism to claim excess proceeds under both federal and state law. (ECF No. 19, PageID.238-41). Notably, the parties filed their briefing before the Michigan Supreme Court decided to hear *Jackson* (and right around when it decided *Schafer*). These recent developments were discussed at the motion hearing.

1. **General Viability of Plaintiff's Claims**

The parties do not dispute that Plaintiff pled a viable Fifth Amendment takings claim against the County for excess equity arising from foreclosure on the Duran property. *See also Hall*, 51 F.4th at 188. However, as discussed at the hearing, the Sixth Circuit recently clarified that "a putative class whose members sought to recover their property's surplus equity" "c[annot] meet" the ascertainability requirement to maintain a class action because "[d]etermining fair market value involves an individualized assessment of each property and requires proof that is variable in nature and ripe for variation in application." *Bowles v. Sabree*, 121 F.4th

11

539, 550 (6th Cir. 2024) (quotation marks and citation omitted). Because Plaintiff's and purported class members' claims here are for the retention of equity rather than proceeds, the class claims must be dismissed.

As stated, the County argues that Plaintiff's Count II (the state constitutional claim), Count IV (alleging unjust enrichment), and Count V (the Eighth Amendment claim) all fail as a matter of law under *Hall*.

As an initial matter, Plaintiff's Eighth Amendment claim is meritless. *See Hall*, 51 F.4th at 196-97 (affirming dismissal of Eighth Amendment claim under similar facts); *Proctor v. Saginaw Cnty. Bd. Of Comm'rs*, 340 Mich. App. 1, 34-36 (2022) (no viable Eighth Amendment claim related to retention of excess proceeds because the GPTA is not punitive in nature); *Freed v. Thomas*, 81 F.4th 655, 659 (6th Cir. 2023) (same).

Next, given the Michigan Supreme Court's recent directive in *Jackson*, 12 N.W.3d at 600, the law applicable to Plaintiff's state constitutional claim remains unsettled in various respects. *See Flummerfelt v. City of Taylor*, No. 22-10067, 2025 U.S. Dist. LEXIS 14964, at *21-22 (E.D. Mich. Jan. 28, 2025). The Court therefore will abstain from addressing the claim's viability at this time. *See id.* at *22 (because of *Jackson*, holing in abeyance whether a similar claim was futile); *Hall*, 51 F.4th at 196 (directing abstention by the lower court because "[w]hether the facts alleged here violate the Michigan Constitution's Takings Clause is an issue for the Michigan

12

courts to decide"); *see also Jones v. Coleman*, 848 F.3d 744, 750 (6th Cir. 2017) (abstention applies "when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided").

The same is true concerning Plaintiff's claim for unjust enrichment. Although the Michigan Court of Appeals has clarified that *Rafaeli* provides viable claims of unjust enrichment *and* inverse condemnation to collect surplus *proceeds* realized from foreclosure, *Proctor v. Saginaw Cty. Bd. Of Comm'rs*, 340 Mich. App. 1, 16-17 (2022), the law remains unsettled concerning claims for excess equity like Plaintiff's here. Furthermore, it is undisputed that the County sold the Duran property for no more than the debt owed, so the Court fails to see how the County, the only defendant named in this case, received any *benefit* as needed to be unjustly enriched. *See Bellevue Ventures, Inc. v. Morang-Kelly Inv.*, 302 Mich. App. 59, 64 (2013) ("The elements of a claim for unjust enrichment are (1) receipt of a benefit by the defendant from the plaintiff, and (2) an inequity resulting to plaintiff from defendant's retention of the benefit.").

The last claim to address is Plaintiff's alleged due process violation. As stated, Plaintiff argues that the County's process lacked sufficient notice and an opportunity to be heard.[3] Plaintiff essentially argues that the County's foreclosure was invalid

---

[3] Plaintiff argument in the response to the County's motion and at the motion hearing relate only to the County's process before 2020 when the GPTA was amended.

13

because the Duran property was not delinquent on taxes for a full year before foreclosure. Plaintiff relatedly argues that there is at least a question of fact concerning when the County took absolute title to the property. *See infra* Section II.B.2.

The record here includes a certificate of forfeiture from the County—dated April 5, 2016, and recorded on April 14, 2016—indicating that the Duran property was forfeited to the County on March 1, 2016, "for NON PAYMENT OF REAL PROPERTY TAX YEAR 2014," and that the "property will be titled absolutely" to the County "if not redeemed on or before the March 31 immediately succeeding the entry in an uncontested case of a judgment foreclosing the property [or 21 days after entry of the foreclosure judgment in a contested case]." (ECF No. 16-1).

The County's notice of judgment of foreclosure, which it recorded on August 9, 2017, states that the Wayne County Circuit Court entered a judgment of foreclosure for the property on March 29, 2017, which "vest[s] absolute title to [the property] in the Wayne County Treasurer . . . if not redeemed within 21 days after

---

Therefore, to the extent that that Plaintiff's complaint also references the current GPTA and asserts that Mich. Comp. Laws § 211.78t is unconstitutional, this argument was abandoned. In any event, the application of Mich. Comp. Laws § 211.78t with respect to claims premised on the retention of excess equity remains unsettled under Michigan law and should not be decided here. *See Jackson*, 12 N.W.3d at 600; *Flummerfelt*, 2025 U.S. Dist. LEXIS 14964 at *14-22.

14

entry of the Judgment." (ECF No. 16-3). The notice also states that "[t]his Judgment became final and unappealable on March 31, 2017." (ECF No. 16-3).

To support the due process claim, Plaintiff relies on another certificate of forfeiture recorded on April 11, 2017. (*See* ECF No. 16-4). Plaintiff also attaches the property's tax payment history to support that Duran was not delinquent on taxes for a full year before foreclosure. (*See* ECF No. 16-2). This payment history, however, shows taxes owed on the property for 2010, and for each year from 2012 to 2016. (ECF No. 16-2, PageID.170-71). This is consistent with the March 2016 forfeiture due to nonpayment for the 2014 tax year, which was well over one year before the property foreclosure here. And the County's certificate of forfeiture provided adequate notice that the County would foreclose on the property as permitted under Michigan law if not redeemed, which never occurred here.

It is admittedly curious why the County recorded another certificate of forfeiture on April 11, 2017. This document, dated March 29, 2017, states that the Duran property was forfeited on March 1, 2017, for nonpayment of 2015 taxes. (ECF No. 16-4). Nevertheless, this came after the County, having provided sufficient notice in the spring of 2016, already foreclosed on the property due to nonpayment of earlier taxes. For these reasons, Plaintiff has no viable due process claim.

### 2. Timeliness of Claims

Because they arose in Michigan, the statute of limitations for Plaintiff's § 1983 takings and due process claims is three years, *Wolfe v. Perry*, 412 F.3d 707, 714 (6th Cir. 2005); *Estate of Majors v. Gerlach*, 821 F. App'x 533, 537 (6th Cir. 2020); *Wershe v. City of Detroit*, 112 F.4th 357, 365 (6th Cir. 2024). The statute of limitations for Plaintiff's unjust enrichment claim is six years. *Estate of Tyner by Hickman v. O'Bey*, No. 351784, 2021 Mich. App. LEXIS 4052, at *5 (Mich. Ct. App. Jul. 1, 2021). The statute of limitations for Plaintiff's state takings claim is also six years. *Schafer*, ___ Mich. at ___; 2024 Mich. LEXIS 1438 at *29.

As an initial matter, the parties dispute when exactly Plaintiff's claims accrued. The law is clear, at least for Plaintiff's federal claims, that accrual occurs when a county takes absolute title to property through the foreclosure process. *See Hall*, 51 F.4th at 196 (the event that gives rise to a takings claim was "the County's taking of 'absolute title' to the plaintiffs' homes"); *Lyndon's LLC v. City of Detroit*, 2024 U.S. App. LEXIS 17690, at *5, 7-8 (6th Cir. Jul. 16, 2024) (unpublished) (relying on *Hall* to conclude that all the plaintiff's constitutional claims, which related to the defendants' foreclosure and retention of surplus equity, accrued when the County foreclosed on and took absolute title to the property).

The County argues that this occurred on March 31, 2017, the date the judgment of foreclosure became final and unappealable. (ECF No. 13, PageID.125;

16

ECF No. 19, PageID.235-36; ECF No. 16-3). In contrast, Plaintiff argues that the County "arguably obtained absolute title" on August 9, 2017, which was when the judgment of foreclosure was recorded. (ECF No. 16, PageID.151; ECF No. 16-3). Plaintiff also argues that the foreclosure "was not proper until February of 2018 because the last Certificate of Forfeiture was filed on April 14, 2017." (ECF No. 16, PageID.153). And Plaintiff asserts that "[t]here is no plausible scenario that the Plaintiff could have had even constructive notice of a foreclosure prior to August 9, 2017, considering the recorded second notice of forfeiture and the recorded Notice of Foreclosure." (ECF No. 16, PageID.153).

As already discussed, the County's second certificate of forfeiture upon which Plaintiff relies came after the County, having provided sufficient notice in the spring of 2016, already foreclosed on the property due to nonpayment of earlier taxes. Plaintiff does not show that the March 29, 2017 foreclosure was improper in any way. The only question of fact concerning when the County took absolute title to the property is if this occurred when the foreclosure became final and unappealable on March 31, 2017, or whether there still remained "21 days after entry of the Judgment" to pay the debt and redeem the property. (*See* ECF No. 16-3).

But even assuming Plaintiff's federal claims[4] accrued on the later date of April 19, 2017, 21 days after the judgment of foreclosure, they would still be

---

[4] The state claims are discussed next.

17

untimely. Absent tolling, Plaintiff's federal claims would have expired on April 19, 2020. In 2020, the Michigan Supreme Court issued administrative orders tolling all Michigan statutes of limitations during the COVID-19 pandemic, with this in effect from March 10, 2020, until June 20, 2020. *Gottsleben v. Informa Media, Inc.*, No. 22-866, 2023 U.S. Dist. LEXIS 117323, at *7 (W.D. Mich. Jul. 7, 2023); *Carter v. DTN Mgmt. Co.*, 345 Mich. App. 378, 383-86 (2023).

So if we assume that Plaintiff's federal claims were tolled by these orders, 40 days remained for Plaintiff to file once COVID tolling ended on June 20, 2020. Plaintiff's federal claims therefore expired at the latest on July 31, 2020. Critically, *Bowles*, the case on which Plaintiff mostly relies to support tolling, was not filed until October 22, 2020. *Bowles*, 2022 U.S. Dist. LEXIS 8172 at *22.

In sum, Plaintiff's federal claims, which Plaintiff did not file until April 15, 2024, were untimely even assuming that tolling pursuant to the COVID orders and *Bowles* applies. These claims must therefore be dismissed with prejudice. And because (1) all federal claims are dismissed, (2) Plaintiff's state claims involve unsettled and developing state law, and (3) this case is at an early stage, the Court declines to exercise supplemental jurisdiction over the state claims. *See Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed.");

28 U.S.C. § 1367(c)(1), (3) (district courts may decline to exercise supplemental jurisdiction where (1) it has dismissed all claims over which it has original jurisdiction, or (2) the claim raises a novel or complex issue of state law).  However, because the Court does not opine on the merits of Plaintiff's state claims, they are dismissed without prejudice.

* * *

For the reasons given, the Court ORDERS that the County's motion to dismiss (ECF No. 13) is GRANTED IN PART.

IT IS FURTHER ORDERED that Plaintiff's federal claims are dismissed with prejudice.

IT IS FURTHER ORDERED that Plaintiff's state claims are dismissed without prejudice.

Dated: March 24, 2025                                  s/Robert J. White
                                                                                      Robert J. White
                                                                                      United States District Judge